**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL THOMAS CARNEVALE, | ) | |
| | ) | Civil Action No. 2: 13-cv-0915 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | United States Magistrate Judge |
| MICHAEL HARLOW, et al., | ) | Cynthia Reed Eddy |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**[1]

Petitioner, Daniel Thomas Carnevale, a state prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his convictions for Arson, Burglary, Aggravated Assault and three counts of Second Degree Murder. For the reasons that follow, the Petition will be denied.

## I. Relevant Factual and Procedural History

On direct appeal, the Pennsylvania Superior Court set forth the following relevant facts.

> [T]he evidence presented [at trial] established that the Defendant [Daniel Thomas Carnevale, Petitioner], was an unemployed heroin and cocaine addict, who regularly stole checks form residents' mailboxes at the Colombia House Apartments in Bloomfield to support his drug habits. In the early morning hours of January 17, 1993, [Petitioner] . . . was advised that the building and mailboxes were under surveillance. . . . [Petitioner] traveled to the Columbia House Apartments, where he broke into the basement office in an attempt to locate and destroy the surveillance equipment. When he failed to find the surveillance equipment, [Petitioner] obtained a can of paint lacquer/thinner from the adjacent mechanical room,

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge. See ECF Nos. 6 and 10. *See also* 28 U.S.C. § 636(c)(1).

1

> doused the office and mechanical room and lit it. The
> [Apartments] were completely destroyed by fire. . . . Two residents
> of the Columbia House Apartments died inside the building from
> Carbon Monoxide poisoning and smoke inhalation. Another
> resident died from head injuries when he jumped out of a window
> in an attempt to escape from the fire. . . .

(ECF No. 11-5, page 2). Charges were not brought against Petitioner until July, 2006, over thirteen years after the fire (ECF No. 2, page 1). Petitioner was charged and convicted in August 2007 of three counts of Second Degree/Felony Murder, as well as Burglary, Aggravated Assault, and Arson. (ECF No. 11-5, page 2).

The evidence presented at Petitioner's trial rested primarily upon the testimony of three key witnesses. First, a Commonwealth expert from ATF who testified as to the nature of the cause of the fire (arson). (ECF No. 11-5, page 2). Second, the testimony of Shane Evans, who "testified that he was walking by the Columbia House Apartments shortly before the fire was noticed, and observed [Petitioner] exiting the door to the basement office of the apartment building." *Id*. Third, "[t]he Commonwealth also presented the remarkably detailed testimony of jailhouse informant Sean Burns. Mr. Burns testified that the Defendant confessed his involvement in the fire to him in December, 2006 after his arrest and while he was awaiting trial." *Id*.

Petitioner was sentenced to three concurrent terms of life imprisonment for the murders, and consecutive terms of imprisonment of seven to fourteen years for Aggravated Assault, six to twelve years for Burglary, and seven to fourteen years for Arson. (ECF No. 11, page 2). Post-sentence motions were denied. (ECF No. 11-1, page 7). Petitioner then filed a timely appeal to the Pennsylvania Superior Court. (ECF No. 11-5, page 14). Petitioner raised the following issues in his appeal.

1. Under Pennsylvania law, does the government survive an insufficiency challenge for the charges of burglary, arson, aggravated assault, and homicide when the only evidence presented at trial was the Appellant's presence at the scene of the crime coupled with the uncorroborated testimony of a jailhouse snitch?

2. Does a verdict of guilt beyond a reasonable doubt for the 13-year old charges of burglary, arson, aggravated assault, and homicide shock the court's conscience and one's sense of justice when the only evidence offered against Appellant was that he was present at the scene and allegedly confessed to a jailhouse snitch?

3. Is the denial of a motion to dismiss a 13-year-old charge of aggravated assault and burglary clearly erroneous and offend fundamental notions of due process such that a reversal and new trial must be granted?

4. Did the trial court abuse its discretion by permitting the Commonwealth to introduce evidence of a defendant's prior convictions that extended beyond the permissible ten year look back period without prior written notice?

(ECF No. 11-5, page 3). The Pennsylvania Superior Court affirmed the judgment of sentence by Order dated March 24, 2010. (ECF No. 11-5, page 14). Petitioner did not appeal directly to the Pennsylvania Supreme Court. Instead, Petitioner then filed a petition for relief under the Pennsylvania Post Conviction Relief Act (P.C.R.A.), 42 Pa. Cons. Stat. § 9542, which raised the following claims.

1. Was direct appeal attorney ineffective for causing weight of evidence claim to be waived on direct appeal at No. 736 WDA 2008?

2. Was trial attorney ineffective for failing to cross examine Mr. Burns, a jailhouse snitch, about whether he hoped to receive favorable treatment from the Commonwealth for his testimony?

3. Was trial attorney ineffective for failing to raise newly discovered deal given Mr. Burns in exchange for his testimony during direct appeal?

4.  Should after discovered evidence that Mr. Burns lied during his testimony at Petitioner's trial lead to a new trial?

5.  Was trial attorney ineffective for improperly advising Petitioner not to testify at his own trial?

6.  Was trial attorney ineffective for not calling character witnesses during trial?

7.  Was trial attorney ineffective for not calling an arson expert at trial?

(ECF No. 1, page 4).  The PCRA court denied the petition for relief by Order dated May 9, 2011.

(ECF No. 11-9, page 1).  Petitioner filed a timely notice of appeal to the Pennsylvania Superior

Court on June 2, 2011.  (ECF No. 11-9, page 3).  On July 20, 2012, the court affirmed the denial

of P.C.R.A. relief.  Petitioner filed a Petition for Allowance of Appeal, which was denied by the

Supreme Court of Pennsylvania on April 3, 2013.  (ECF No. 11-9, page 4).

Petitioner filed with this Court the instant timely Petition for Writ of Habeas Corpus on

June 28, 2013, wherein he raises the following claims.

1.    Insufficient evidence produced at trial to support convictions.

2.     Ineffectiveness of trial and direct appeal attorneys for the grounds listed:

A.  Direct appeal attorney did not make documents needed to support this claim part of the record so Superior Court deemed this issue waived.

B.  Trial attorney did not question snitch about whether or not he hoped to receive favorable treatment from the Commonwealth in his own case, in exchange for his testimony against Petitioner.

C.  Trial attorney did not raise newly discovered deal given to snitch when the information became available during Petitioner's direct appeal.

D.  After discovered evidence, in the form of an affidavit attesting that snitch admitted to lying during his testimony

should have resulted in a new trial, or dismissal of the charges, since his testimony was only evidence linking Petitioner to crimes.

E.   Trial attorney gave Petitioner incorrect advice about what old convictions could be brought up at trial causing him to decline to testify at trial.

F.   Trial attorney did not call character witnesses at trial, telling Petitioner that they could not be used.

G.   Trial attorney did not call an arson expert at trial to refute State's contention that fire was deliberately set.

3.  Cumulative effect of above errors denying Petitioner a fair trial.

(ECF No. 1).


## II.  Standard of Review

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application" of clearly established federal law if the state court (1) identifies the

correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786–87.

In Renico v. Lett, 559 U.S. 766 (2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The

question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 559 S.Ct. at 772.  The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong.  The latter question, in particular, is a close one.  As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial.  The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

Id. at 778, n. 3 (emphasis added).[2]  See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it."  Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

---

[2].  See also Harris v. Ricci, 607 F.3d 92, 99 (3d Cir. 2010) (explaining and applying Lett).

## III.  Review of Petitioner's Claims

### 1.  Insufficient evidence produced at trial to support convictions

Petitioner's first claim is that the evidence was insufficient to support a guilty verdict. Where a petitioner challenges his incarceration on this ground, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A federal court must apply this standard "'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"  Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1977) (quoting Jackson, 443 U.S. at 324 n. 16).  See also Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997).  The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of the conflicts in the evidence.  Jackson, 443 U.S. at 326.  Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight.  Parke v. Rakey, 506 U.S. 20, 36 (1993).  This deferential test places a very heavy burden on the appellant.  United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

The test for insufficiency of the evidence is the same under both Pennsylvania and federal law.  Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992); Commonwealth v. Bricker, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable

to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged).

Petitioner was convicted of arson, burglary, and three counts of second degree murder. In Pennsylvania, to be convicted of arson, the government must show that the defendant "intentionally start[ed] a fire or causes an explosion . . . whether on his own property or on that of another, and if: he thereby recklessly places another person in danger of death or bodily injury." 18 Pa.C.S.A. § 3301(a)(1)(i). To be convicted of burglary, the government must likewise show that the defendant "with the intent to commit a crime therein . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is [or is not] adapted for overnight accommodations in which at the time of the offense any person is [or is not] present." 18 Pa.C.S.A. § 3502. Finally, to be convicted of second degree murder, the government must prove, beyond a reasonable doubt, that the defendant caused the death of another person "while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502.

Petitioner raised the issue of insufficiency of the evidence on direct appeal, and then again in his PCRA petition under the aegis of his "waiver of weight of the evidence claim," which essentially alleges that his appellate counsel was ineffective for not properly presenting his insufficiency of the evidence claim. Petitioner's ineffective assistance claim will be discussed below.

With regard to the insufficiency claim, Petitioner essentially attacks the credibility of the two main witnesses in his prosecution: Shane Evans, who testified that he saw Petitioner at the scene of the fire, and Sean Burns, "the jailhouse snitch." (ECF No. 2, pages 3-4). The PCRA court held that "the evidence presented by Mr. Evans and Mr. Burns was strong and supportive,

and the verdicts were not against the weight of the evidence." (ECF No. 12-2, page 5). The PCRA court further noted that, despite Petitioner's valid arguments as to why a fact-finder might not credit the testimony of the witnesses,

> Mr. Burns' testimony was remarkably consistent and detailed and, despite his status as a jailhouse informant, the jury obviously credited his testimony. Because questions of credibility and the weight of the evidence are determined by the fact finder- here, the jury – and because the appellate court may not substitute its own judgment for that of the factfinder, the Defendant would have had to have demonstrated a result that "shocked the conscience" in order to obtain relief . . . .

*Id.* The PCRA court determined that Petitioner failed to meet the high bar of "shocking the conscience," and that the decision of the trier of fact must stand. *Id.*

Though the appellate court did not do a thorough analysis of the evidence on direct appeal (ECF No. 11-5, page 8 (deeming the claim to be waived because of Petitioner's failure to include additional evidence in the certified record)), this Court, applying a deferential standard to the judgment of the fact finder, the jury, and, by extension, the PCRA court, also finds that Petitioner failed to meet the high burden in order to obtain relief. The two witnesses for the prosecution testified as to Petitioner's connection with the alleged arson, burglary, and murders, and effectively established a prima facie case for conviction. Indeed, in Petitioner's Brief in Support of Petition for Writ of Habeas Corpus, Petitioner acknowledges that the content of the witnesses' testimony connects Petitioner to the crime. (ECF No. 2, pages 3-4). Petitioner points out that there are numerous reasons for which the testimony of these witnesses should not be considered credible: "the fact that [Shane] Evans waited 13 years before coming forward . . . [that] Sean Burns [is] a jailhouse snitch and career criminal . . . [that] his testimony conflicts with previously established facts in the case . . .," and that both of their testimony was possibly biased and self-serving. *Id.* This Court finds that although these factors *may* lead a jury or factfinder to

deny giving credibility to a witness, it does not shock the conscience to believe that a reasonable jury, upon hearing the testimony of the witnesses, would consider the evidence presented to be credible. The PCRA court correctly applied its appellate standard, and therefore, this claim is denied.

**2. Ineffectiveness of trial and direct appeal attorneys**

Petitioner alleges ineffective assistance of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (holding that the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The United States Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. "The first prong-constitutional deficiency-is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms'." Hinton v. Alabama, __ U.S. ___, 134 S.Ct. 1081, 1088 (2014) (quoting Strickland, 466 U.S. at

688).  "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland."  *Id*. at 1089.  The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable.  Strickland, 466 U.S. at 689.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Hinton v. Alabama, 134 S Ct. at 1089 (quoting Strickland, 466 U.S. at 688).

A defendant is not entitled to relief unless he makes both showings.  Strickland, 466 U.S. at 687.  Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id*. at 694.  The Strickland standard applies equally to appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings.  The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations.  Berryman, 100 F.3d 1089, 1095 (3d Cir. 1996).  In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies.  *Id*.  Likewise, a state court's determination that a decision was a tactical one is a question of fact.  *Id*.

The Supreme Court reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland's</u> standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

<u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct. 770, 785 (2011) (internal quotations and citations omitted). The Court further instructed:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §2254(d). When §

> 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable
> argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 131 S.Ct. at 788 (internal quotations and citations omitted).

Petitioner's ineffective assistance of counsel claim can be divided into five parts.

A. <u>Improperly advising Petitioner not to testify</u>

Petitioner claims that he chose not to testify in his trial because of the erroneous advice from counsel, which suggested that testifying would allow the prosecutor to admit evidence of Petitioner's prior burglaries. (ECF No. 2, pages 7-8). Petitioner claims that he has no criminal record which would have been admissible into evidence, because his convictions date more than ten years prior to his trial. <u>Id</u>. at 8. The PCRA court noted, however, that the trial judge had granted a motion to extend the look-back to allow the burglary convictions to be admissible if Petitioner testified. (ECF No. 12-2, page 12). Petitioner's claim fails under the first prong of <u>Strickland</u>.

The advice of trial counsel for Petitioner not to testify was a reasonable exercise of professional judgment and strategy. "Counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>United States v. Aldea</u>, 450 F. App'x 151, 153 (3d Cir. 2011) (quoting <u>Strickland</u>, 466 U.S. at 690). In <u>Aldea</u>, counsel advised his client not to testify "because the risk of exposing him to cross-examination . . ." <u>Id</u>. The defendant in that case "was aware of his right to testify, understood counsel's rationale for not calling him as a witness, and failed to raise with the court his desire to testify." <u>Id</u>. Here, the PCRA court provided in its opinion the transcript of Petitioner's colloquy, in which he explicitly waives his right to testify, and acknowledges his rights to do so and the possibility of cross examination and the elicitation of his prior

convictions. (ECF No. 12-2, pages 12-14). Petitioner knowingly and voluntarily waived his right to testify, and invoked his absolute right not to testify. His counsel acted reasonably in advising him to do so. The PCRA court correctly applied this standard, and therefore, this claim is denied.

B. Failure to call any character witnesses during trial

Petitioner claims that his trial counsel was ineffective because he failed to call any character witnesses based upon the trial counsel's false statement that Petitioner "could not have any character witnesses at his trial." (ECF No. 2, page 9). This claim fails under both prongs of Strickland.

First, counsel's decision not to call character witnesses was a reasonable exercise of professional judgment. As established above, the trial judge had allowed for an extended look-back period for Petitioner's prior convictions. Trial counsel and Petitioner bore out these issues in a colloquy on the record:

> [Counsel]: You also understand you have the right to call character witnesses that will attest to your reputation in the community for truthfulness and being a law abiding citizen?
>
> [Petitioner]: Yes.
>
> [Counsel]: Do you understand that if I call those witnesses, including yourself, the District Attorney, Ms. DiGiovanni, has the right to cross-examine them as to the veracity of their statements? Do you understand that?
>
> [Petitioner]: Yes.
>
> [Counsel]: You also understand that she can . . . inform them of any of your crimes . . . [and] that the Judge, in her discretion, can extend that deadline to include crimes back to 1993?
>
> [Petitioner]: Yes.

(ECF No. 12-2, page 12). Applying <u>Strickland</u>'s heavy presumption that trial counsel was exercising reasonable prudence in developing trial strategy, this claim fails under the first prong of <u>Strickland</u>.

Assuming, *arguendo*, that counsel's failure to call character witnesses was unreasonable, this claim still fails under <u>Strickland</u>'s second prong: prejudice. Petitioner has failed to show any reason why a character witness would be likely to change the outcome of the trial. Given the fact that such testimony would allow the prosecutor to bring to the attention of the jury Petitioner's prior convictions, it is clear from the record that such evidence would prove to be harmful to Petitioner's case. This claim fails under both <u>Strickland</u> prongs, and therefore, this claim is denied.


C. <u>Failing to obtain a defense arson expert</u>

Petitioner claims that trial counsel was ineffective for failing to call an expert to refute the prosecution's expert testimony regarding the origin of the fire. (ECF No. 2, pages 9-10). Just as in the decision not to call a character witness, counsel's failure to call an expert witness in this case does not constitute inadequate assistance of counsel. The PCRA court notes that it would have been impossible for an expert to examine the scene of the fire, because the charges against Petitioner had not been brought until eight years after the physical evidence had been destroyed. (ECF No. 12-2, page 16). It was therefore not unreasonable for counsel to fail to find an expert who would be able to testify for the defense. Therefore, this claim fails under the first prong of <u>Strickland</u>.

Assuming, *arguendo*, that it was unreasonable to not call an expert to testify, Petitioner has failed under the second prong of <u>Strickland</u> to establish that he suffered prejudice. Because

of the lack of physical evidence, an expert called by the defense would be at a significant disadvantage, perhaps to the detriment of their credibility. Importantly, Petitioner has failed to allege in his petition that any expert was available or could have made a conclusion that would have been helpful to Petitioner's case. This constitutes a failure to satisfy the second prong of Strickland. This claim is denied.

### D. Failure to impeach witnesses

Petitioner brings a series of claims, which can all fall properly under the aegis of trial counsel's failure to impeach witnesses. Petitioner claims that trial counsel was ineffective for

> not eliciting from the snitch, Burns, that he was expecting favorable treatment in his case for testifying against [Petitioner] . . . . not raising newly discovered evidence of Burns' deal with the DA in exchange for his testimony . . .

(ECF No. 2, pages 5 and 7). The PCRA court denied these claims by deeming them to be meritless. (ECF No. 12-2, page 7-8). In its opinion, the PCRA court detailed the transcript at trial, which included extensive direct examination by the prosecutor in which Burns repeatedly denies receiving any promises, threats, or deals which might induce him to testify. *Id*. The record also includes defense counsel's cross examination on this matter, in which defense counsel attempts to impeach the witness regarding the nature of his imprisonment. *Id*.

Further, the PCRA court points out, and this Court notes, that Petitioner has not presented direct evidence of any deal made between the prosecutor and the witness: the documents which show a favorable outcome in the witness's unrelated case were addressed and attested to on direct and cross examination at Petitioner's trial:

> Q: [H]ave you asked for any consideration from myself or anyone else in terms of getting a good deal on [your case] or getting out of jail on that, anything like that?

> A:  They're minor charges.  I have time served.  I got three weeks,
> I'll be out.

*Id*.  Petitioner's argument that an inference should be made of an improper deal is without merit, particularly in light of the fact that the PCRA court concurs with that conclusion, and the deferential lens through which this Court must scrutinize the PCRA court's conclusion.  This claim is denied.


### E.  Waiver of claims on appeal by appellate counsel

### 1.  Weight of the Evidence Claim

Petitioner claims that his appellate counsel inappropriately failed to enter essential documents into the certified record in order to effectively appeal on the ground of insufficiency of the evidence.  (ECF No. 2, page 5).  To wit, appellate counsel failed to enter into the certified record a court order granting witness Burns' "motion for nominal bail, a few days after he testified; the criminal information in Burns' case; and Burns' sentencing guidelines sheet."  *Id*. As a result, the Superior Court of Pennsylvania affirmed his conviction, deeming the "weight of the evidence argument, which relies upon these documents, . . . waived."  (ECF No. 11-5, page 8).  The PCRA court and this Court agree that "[Petitioner] is correct in his assertion that counsel's error caused the claim to be waived."  (ECF No. 12-2, page 6).  Failing to attach essential documents to the record is likely an unreasonable mistake by counsel under the Strickland standard.  However, Petitioner has failed to show that the appellate counsel's mistake caused *actual prejudice*.

The second prong of Strickland requires that counsel's unreasonable performance actually prejudiced the defense.  Strickland, 466 U.S. at 687.  In other words, for Petitioner to

obtain relief for this claim, Petitioner must show that the result would have been different if not for the failure of counsel.  Although the appellate court did not examine the sufficiency of the evidence claim on its merits, two judicial bodies have: the PCRA court and now this Court. (ECF No. 12-2, page 6; and *supra* Section III(1)).  The PCRA court and this Court have both determined that the sufficiency of the evidence claim is without merit.  Petitioner has failed to show how review on the merits under direct appeal would have yielded a different outcome than the decisions of the jury, the PCRA court, and this Court.  Petitioner's claim fails under scrutiny of the second <u>Strickland</u> prong, and thus, this claim is denied.

### 2.  After Discovered Evidence Claim

Petitioner also claims that appellate counsel was inadequate in failing to bring an after discovered evidence claim on direct appeal.  This claim is based on appellate counsel's "failing to present new evidence that Burns lied during his testimony against [Petitioner] once it became available during the pendency of [Petitioner's] direct appeal . . . ."  (ECF No. 2, pages 5 and 7). Petitioner asserts that his appellate counsel failed to adequately assert a claim for "after discovered evidence:" to wit, a statement by a co-inmate at Allegheny County Jail named David Dixon.  (ECF No. 2, page 7).  Petitioner alleges that Dixon's affidavit discredits Burns' testimony, because Burns allegedly told Dixon that Burns would lie on the stand in Petitioner's trial.  *Id*.  Petitioner asserts that if this affidavit were admitted into evidence at his trial, the jury would come to a different conclusion in Petitioner's case.  *Id*.

The PCRA court denied this claim based on Petitioner's "complete failure to establish his claim for after-discovered evidence."  (ECF No. 12-2, page 11).  Even if Petitioner, or, as the case may be, Petitioner's appellate counsel, had adequately established all of the elements of a

proper after-discovered evidence claim (i.e. "when the evidence was discovered and/or why it could not have been discovered before the conclusion of the trial; . . . [why the evidence] would not be cumulative or corroborative of the evidence presented at trial . . . (*Id.*)), Petitioner has failed to show, under the second prong of the <u>Strickland</u> standard, that he was actually prejudiced by the failure to assert this claim. Dixon's affidavit essentially amounts to a prior inconsistent statement useable to impeach the witness (Burns) on the stand. There is no evidence on the record to suggest that this affidavit would add significantly to the efforts already made by trial counsel to impeach the witness, and fails to establish that its presentation at trial or on appeal would change the outcome for Petitioner. This claim is denied.

### 3. Cumulative effect of all errors

A. <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. 2254(c) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, mandamus proceedings, or other available procedures for judicial review. *See, e.g.*, <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>Doctor v. Walters</u>, 96 F.3d 675, 678 (3d Cir. 1996); <u>Burkett v. Love</u>, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis

in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Id*. at 260. Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989).

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellant review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).[3]

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (2d Cir. 1997; Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C.

---

[3] On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review had already expired prior to May 9, 2000. Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001).

2254(c). Federal court review of claims which have not been formally exhausted only arises in a

narrow set of cases: specifically, requiring the habeas petitioner to bring these claims in state

court would be futile. "Futility" exists where:

> *a state's highest court has ruled unfavorably on a claim involving*
> *facts and issues materially identical to those undergirding a*
> *federal habeas petition and there is no plausible reason to believe*
> *that a replay will persuade the court to reverse its field*; where the
> state provides no means of seeking the relief sought; or where the
> state courts have failed to alleviate obstacles to state review
> presented by circumstances such as the petitioner's pro se status,
> poor handwriting and illiteracy.
>
> If an appropriate remedy does not exist or its utilization is
> frustrated by the state system ... [t]he deference accorded the state
> judicial process must give way to the primary role of the federal
> courts to redress constitutional deprivations.... If it appears that the
> prisoner's rights have become an "empty shell" or that the state
> process is a "procedural morass" offering no hope of relief, then
> the federal courts may excuse the prisoner from exhausting state
> remedies and may directly consider the prisoner's constitutional
> claims.

Lines v. Larkins, 208 F.3d 153, 162-63 (3d Cir. 2000) (internal citations omitted) (emphasis

added).

Petitioner's third general claim for relief is based upon the cumulative effect of all other

alleged grounds. (ECF No. 1, page 8). Despite requirements under Pennsylvania law, Petitioner

did not raise this claim in his direct appeal. Petitioner also failed to present this issue to the

Superior Court on appeal from the denial of his PCRA petition. Petitioner claims, however, that

his failure to exhaust this claim is rooted in its futility in Pennsylvania courts. Indeed,

Pennsylvania courts

> have long held that "no number of failed claims may collectively
> warrant relief if they fail to do so individually." Natividad, 938
> A.2d at 340–41; Rainey, 928 A.2d at 245; Commonwealth v.
> (James) Williams, 586 Pa. 553, 896 A.2d 523, 548 (2006), cert.
> denied, 549 U.S. 1213, 127 S.Ct. 1253, 167 L.Ed.2d 88 (2007);
> Blystone, 725 A.2d at 1208–09; Commonwealth v. (Craig)

<u>Williams</u>, 532 Pa. 265, 615 A.2d 716, 722 (1992).

<u>Com. v. Steele</u>, 961 A.2d 786, 833-34 (2008). *See also*, <u>Allen v. Attorney General of Maine</u>, 80 F.3d 569, 573 (1st Cir. 1996) ("The [state court's] decision . . . propelled this case within the perimeter of the futility exception to the exhaustion rule. Thus, the judge determined that it would be bootless for the petitioner to invite state appellate review and excused him from doing so."). Pennsylvania's well established precedent barring relief for cumulative effects of errors renders raising such a claim in state court entirely futile. Thus, this Court will review the cumulative effects claim on its merits.

### B. <u>Cumulative effect claim's merits</u>

Petitioner claims that the above mentioned errors, even if deemed to be harmless alone, when taken together, cumulatively, the errors are prejudicial enough to render an unfair trial. (ECF No. 2, page 11). This Court has found, above, that each of Petitioner's claims fail to establish a basis for relief. Most of these claims have been determined to be utterly without merit, as they did not constitute error. (*See*, *supra* III(1), III(2)(A-D)). Two claims, however, were determined to be error, albeit harmless under the <u>Strickland</u> standard. (*See*, *supra* III(2)(E)(1-2)). To wit, this court found that the appellate counsel improperly failed to attach necessary documents to Petitioner's appeal in order to be considered for the claim of insufficiency of the evidence, and second, that counsel failed to sufficiently make a claim for after-discovered evidence in connection with Mr. Dixon's affidavit. *Id*. This Court finds, however, that each of these errors, taken alone, is harmless.

The inquiry under the cumulative effect claim "is whether, in light of the record as a whole, the State's improper [actions] had a substantial and injurious effect or influence in

determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993) (internal quotations omitted). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>Albrecht v. Horn</u>, 485 F.3d 103, 139 (3d Cir. 2007) (quoting <u>Darks v. Mullin</u>, 327 F.3d 1001, 1018 (10th Cir. 2003)).

Petitioner's claims, even when taken cumulatively, do not create a "substantial and injurious effect." As noted above, although appellate counsel erred by failing to attach necessary documents to the appeal, the claim for appeal is completely without merit, even if the certified record had been complete. (*See*, *supra* III(1)). Further, there is no evidence to show that the use of Dixon's affidavit, even if it were available at trial, would have had any impact on the jury's verdict. Dixon's affidavit simply provides an additional ground by which to impeach a witness for the prosecution, but on redundant grounds by which he had already been impeached. (*See*, *supra* III (2)(E)(2)). Even when looking at these two claims together, Petitioner has not established a cognizable claim for relief. This claim is denied.

## IV. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C.

2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

## IV. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus will be denied and a certificate of appealability will be denied. An appropriate Order follows.

**ORDER**

**AND NOW**, this 15th day of August, 2014, **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc:     DANIEL THOMAS CARNEVALE
        HH-3445
        S.C.I. Albion
        10745 Rt., 18
        Albion,  PA 16475

        Leanne K. Shipley
        Office of the District Attorney of
        Allegheny County
        Email: lshipley@da.allegheny.pa.us

        Cory J. Schuster
        Office of the District Attorney of
        Allegheny County
        Email: cschuster@da.allegheny.pa.us